## Borckman's Appeal.

A wife filed a bill complaining that articles of separation previously agreed upon between herself and her husband were procured from her by

NOTE.—An agreement between a husband and wife, with a trustee, for a separation during the joint lives, may be valid as to the wife, and binding on the trustee and against the husband, even though provisions which it

fraud and duress; and asking that they be set aside. The husband an-swered denying the allegations of the bill, and alleging adultery, etc., but did not file any cross bill. *Held*, that, in the absence of a cross bill, the judge was right in directing that the bill be dismissed, but was not author-ized to proceed to decree that the articles of separation should be continued in full force and effect.

(Decided May 24, 1886.)

Appeal from a decree of the Common Pleas of McKean County in equity. Modified.

The bill in this case was filed by Eliza B. Borckman by her next friend, James Boggs, against Robert F. Borckman, alleg-ing that plaintiff and defendant were lawfully married on No-vember 9, 1875, and that three children were born to them; that in 1883, her husband took a trip to Europe; that before he left he removed his family from their home in Bradford to Hamil-ton in Canada, to remain until his return; that upon his re-turn he was so illnatured that it was almost impossible to en-dure his conduct and treatment; that he suggested a separation; that by his agent he forcibly took and carried away her children from her and refused to allow her to accompany them; that she became heartbroken, nervous, despondent, and sick in bed; and that while she was in this condition she met defendant's agent by appointment, who produced a written paper (which sub-sequently proved to be articles of separation) for her to sign, and represented to her that it was the last and only offer that defendant would make; and that if she refused to take that offer and sign that paper he would turn her out without any-thing; that the said plaintiff did not and was not in condition

contains as to the children should be void. But there must be actual sepa-ration. Allen v. Affleck, 64 How. Pr. 380.

An agreement made directly between husband and wife for a separation is valid, it seems, when the separation has already taken place, or is to be immediate. Desbrough v. Desbrough, 29 Hun, 592.

A provision, in articles of separation, for a specific sum as alimony dur-

to read or understand the said paper if it had been read, nor was it read to her by the agent; that said plaintiff proposed to said agent to allow her to send for her father, and that he refused and assured her that her father could do no good; that defendant would do nothing else, and that, if she did not sign the paper, that she could not go to Bradford, the home of her husband; and that, if she did go to Bradford, defendant would notify the hotels not to harbor her; that plaintiff insisted that she would go to her children; and thereupon the agent again assured her that she could not see her children if she did go to Bradford; and that, unless she signed the paper, she would get nothing, and offered her the $1,200 mentioned in the paper; that said plaintiff still protested against it and refused; but being entirely among strangers, in a strange city and without friends or advisers, she did not know what to do, and was so overcome by her surrounding troubles and persecutions, nervous and weak in body and mind, sick and in bed, and unable to protect herself, under the threats and coercion of the agent that she must sign the paper or get nothing, that she was finally, through the persistent, threatening impertinence and coercion of the said agent, induced to sign the said paper and take the bundle of money handed her, without knowing what was in the said paper or what she was doing.

ing the life of the wife, does not cease on the death of the husband. Stratton v. Stratton, 77 Me. 373, 52 Am. Rep. 779.

Articles not stipulating against divorce do not bar a suit brought for prior causes. Fosdick v. Fosdick, 15 R. I. 130, 23 Atl. 140.

Capacity of a wife to enter into an agreement of separation with her husband; and obligation of conveyances made in pursuance of such agreement. See Carpenter v. Osborn, 102 N. Y. 552, 3 Cent. Rep. 804, 7 N. E. 823.

The decree to be entered by the court must be confined to the question raised by the pleadings. Morio's Appeal, 4 Pennyp. 398; Horton's Appeal, 13 Pa. 67; Williamson v. Smith, 4 Pa. Dist. R. 307. But if relief, not prayed for, but not inconsistent with the bill, is asked for, the court will allow complainant to amend. Thomas v. Ellmaker, 1 Clark (Pa.) 502. If relief is sought by the defendant for matters arising from the complaint a cross bill must be filed. Freeland v. South Penn Oil Co. 189 Pa. 54, 41 Atl. 1000; Phipps v. Kent, 1 Chester Co. Rep. 158.

The plaintiff further averred that the said writing or articles of separation was unfair, unjust, and unequal, not making sufficient provision for her maintenance and living, and was obtained by the duress, menaces, threats, and fraud of the said defendant at and prior to the execution thereof; and for said causes it ought to be held inoperative and void in all its provisions as between herself and her said husband the defendant.

The bill prayed that the said articles of separation be annulled, and for further relief.

The following is the material portion of the answer:

"That this honorable court may be informed of the justness, fairness, and equity of said articles of separation and of the absence of all duress, menaces, threats, and fraud, and to correct the many misstatements, misquotations, and misrepresentations in said complainant's bill of complaint contained, I will state the reasons impelling me to agree to articles of separation between myself and wife, and narrate the circumstances under which the same were executed.

"After my said return from Europe I became aware that my wife's affections had been alienated. She refused to return to Bradford where we had heretofore resided, and where my business necessitated my presence. She remained in Hamilton, notwithstanding my protests and repeated objections. Investigating the cause of this persistence I learned that she had been criminally intimate with a certain William H. Carlton; that with him she was giving herself up to adulterous practices and was guilty of adultery. I accused her of said practices, whereupon she admitted her guilt. I then told her to return to her father, the said James Boggs, and I would support her, but demanded the custody of our children. She replied that if I would give her all the money I intended for her support at once, in a lump, and some kind of a paper agreeing that she might go and come when and reside where she chose, that I would not molest her and that she might retain one of our children, the said Margie A. Borckman, she would go where I never would see her again. I would not consent that she should retain any of our children. To save from publicity the dishonor of my family; to shield the reputation of my innocent children; to spare

myself and family the humiliation of disclosing this scandal; and fondly hoping by this means to bury in the closet this family skeleton,—I reluctantly gave my assent to her proposition, provided she would relinquish all right to the custody of our children.

"To this she finally agreed, and on October 10, aforesaid, in pursuance of this agreement, my children were quietly surrendered by the said complainant to the said Schonblom (my agent), who brought them to me. I returned to Bradford with my children. While confined to my room with nervous prostration, the said complainant, becoming impatient at the delayed execution of the said agreement, telegraphed me to meet her at the Tift House in Buffalo. I went there with the said Schonblom on October 16, 1883, but did not participate in the said interview. Mrs. A. Bunton, the complainant and the said Schonblom were present at the said interview. The said complainant at first renewed her demands for our said child Margie, and also wanted $1,000. When this was communicated to me I instructed the said Schonblom to give her any reasonable amount of money, but in no event the custody of the children or either of them. The complainant finally agreed to take $1,200. The said Schonblom during said interview suggested the propriety of communicating with the father of said complainant, James Boggs, an attorney at law, and offered to telegraph for him. To this the said complainant vehemently objected and requested that I be told not to write her father anything about the matter. After the said complainant had been offered ample opportunity for consideration and reflection, and consultation with whomsoever she might desire, she voluntarily, of her own free will and accord, without any fear or compulsion of anyone, in the presence of her friend, Mrs. A. Bunton, O. F. Schonblom, and E. D. Tuthil, signed, sealed, and delivered the said agreement and accepted the said $1,200; which the said Schonblom, for me, then and there paid her."

The master found that plaintiff voluntarily signed the articles of separation, without any coercion or threats on the part of the defendant or anyone acting for him; that the plaintiff, while

staying in Hamilton, did not conduct herself as a faithful wife should; that she transferred her affections from her husband to another; that there was no evidence showing ill treatment of plaintiff by defendant; that the articles of separation had been carried out; that the plaintiff, by her misconduct, had forfeited a suitable maintenance out of the defendant's estate, and believing that no useful and just purpose would be served in this case by following the legal fiction of the unity of person created by marriage; believing that no principle of natural justice demands that the parties to the contract in question should be treated otherwise than contracting parties not so related; believing, in other words, the contract in question to be a fair and conscientious one, under the circumstances which preceded and attended the making of it,—recommended:

1. That the articles of separation executed by the plaintiff and defendant at Buffalo on October 16, 1883, be given full force and effect according to their terms.

2. That the prayer of the plaintiff, as contained in the bill of complaint in this case, be refused and the said bill be dismissed at plaintiff's costs.

Exceptions were taken to the master's report, which were dismissed by the court, and a decree was entered dismissing the bill of complaint, and adjudging that the articles of separation should be given full force and effect; whereupon plaintiff appealed.

*David Sterrett, Robert H. Rose,* and *M. A. K. Weidner,* for appellant.—The deed was void at law and unfair. It was therefore void at law and in equity.

The late Chief Justice THOMPSON, in his opinion as master in the case of Campbell's Appeal, 80 Pa. 306, discusses this proposition as follows: "It is an elementary principle that marriage suspends the capacity of the wife to contract, living with the husband. From time to time the generality of the rule has received limitations in this commonwealth, to meet the demands of a change of policy on this subject; but the rule remains as firmly seated as ever where not modified by statute. The effect

of it is to render void contracts of married women within it, and is the logical sequence of the principle which holds that she is wholly without capacity to contract independent of her husband. It is not *qua* the individual that this results, but because as such she is destitute of the absolute essential to contract, namely, the power to contract. The rule is the necessary result of the relation; otherwise infinite confusion would ensue from an equality of power in both husband and wife to contract during the existence of the marriage relation. The philosophy of the common law was too conservative to sanction such an incongruous state of affairs as this would present. It is beyond doubt, therefore, that contracts of married women are void, unless preserved by some statutory provision." See Macqueen, Husb. & W. 66 Law Lib. 271 *et seq.;* Reeves, Dom. Rel. pp. 45 *et seq.;* Glidden v. Strupler, 52 Pa. 400; Caldwell v. Walters, 18 Pa. 79, 55 Am. Dec. 592; Brunner's Appeal, 47 Pa. 67; Kreiser's Appeal, 69 Pa. 194.

Equity follows the law in this particular, unless equitable considerations in the given clause appear to modify the rule. Schouler Dom. Rel. 276; Cord, Married Women, §§ 35 *et seq.*

The wife, by relinquishing the provisions in the settlement without having received any benefit under it, leaves her husband's estate *in statu quo* and is remitted by virtue of her marital rights to the same condition. It is only on equitable grounds that her contract may be efficient to bind her, and then it is by way of estoppel. But she will not be estopped unless elements of an equitable estoppel appear, which will result in injury to someone interested if she be not estopped.

So long as the marriage relation continues, the utmost good faith is required. Darlington's Appeal, 86 Pa. 512; Kline v. Kline, 57 Pa. 120, 98 Am. Dec. 206.

Although after a separation, by private arrangement of the parties, a husband and wife may be relieved from the necessity of cohabitation, they still retain their relative positions; the husband will consequently be liable for his wife's debts, unless he provides for her maintenance by an adequate allowance and it is regularly paid. 2 Lead. Cas. in Eq. 1700.

Where an allowance is agreed upon between husband and

wife at the time of their separation, the sum must be sufficient therefor and punctually paid; else the court may order the payment of a larger sum. Com. v. Orth, 2 Pearson (Pa.) 446; Story, Eq. 1427.

*R. Brown, M. F. Elliott, R. B. Stone,* and *A. Leo Weil,* for appellee.—Is the deed of separation in controversy valid, and will the courts enforce it? Says Mr. Justice READ in Hitner's Appeal, 54 Pa. 110: "In Wilson v. Wilson, 5 H. L. Cas. 59, Lord ST. LEONARDS said: 'As regards the point of law I think there ought to be no doubt, and can be no doubt now entertained, as to some expressions used by Lord COTTENHAM, he said: 'I now only to be reversed by act of Parliament, that deeds of separation may, and must if they are properly framed, be carried into execution by the courts of this country. There is no question at all about that.' After explaining a misapprehension as to some expressions used by Lord COTTENHAM, he said: 'I only mention it in consequence of what has fallen from my noble and learned friend who has preceded me, because it must not be doubted that the law of this country is that deeds of separation are valid and will be carried into execution.' The same doctrine is distinctly stated in a former hearing of the same case by Lord COTTENHAM, 1 H. L. Cas. 572, citing Jones v. Waite, 9 Clark & F. 109, and the language of Lord Chief Justice TINDAL in delivering the opinion of the judges in that case. In Pennsylvania this rule has been adopted in its fullest extent. In Hutton v. Hutton, 3 Pa. St. 104, Judge ROGERS said: 'Deeds for the separation of husband and wife are valid and effectual, both at law and in equity, provided their object be actual and immediate, and not a contingent or future separation.' And in Dillinger's Appeal, 35 Pa. 357, the same doctrine is maintained and carried out, excluding the widow from all dower and interest in the real and personal estate of her husband agreeably to the deed of separation." See Wilson v. Wilson, 1 H. L. Cas. 538; Flower v. Flower, 25 L. T. N. S. 902; Kitchin v. Kitchin, 19 L. T. N. S. 674; Sanders v. Rodway, 16 Beav. 207; Rex v. Mead, 1 Burr, 542; Hunt v. Hunt, 8 Jur. N. S. 85; Bispham Eq. § 115; 2 Cord, Married Women,

§ 122; Loud v. Loud, 4 Bush, 453; Husband, Married Women, p. 35.

Such agreements will be enforced in courts of equity when made without the intervention of trustees. Hutton v. Hutton, 3 Pa. St. 100; Dillinger's Appeal, 35 Pa. 357.

PER CURIAM:

The learned judge committed no error in refusing the relief prayed for by the plaintiff, nor in decreeing that the bill be dismissed at the costs of the plaintiff therein.

In the absence of any cross bill asking therefor, the portion of the decree as to the force and effect to be given to the articles of separation is unauthorized; and to the extent of striking out that part of the decree it is amended.

Thus modified the decree is affirmed, and the appeal dismissed, at the costs of the appellant.